**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| UNITED RENTALS, INC. and ) <br> UNITED RENTALS (NORTH AMERICA), INC. ) <br> ) <br>             Plaintiffs, ) <br> ) <br> v. ) <br> ) <br> MICHAEL WYNNE, ) <br> ) <br>             Defendant. ) <br> _____ ) | CIVIL ACTION NO. <br> 3:16-cv-01945 <br><br><br> November 28, 2016 |

<u>**COMPLAINT**</u>

The plaintiffs, United Rentals, Inc. and United Rentals (North America), Inc. (collectively, "United" or "Plaintiff"), by and through United's undersigned attorneys, and for its Complaint for injunctive and other relief against Defendant, Michael Wynne ("Wynne" or "Defendant"), hereby state and allege the following:

1.      This action is based on violations of the Federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA") and the willful breach of the restrictive covenants contained in a Confidentiality and Non-Competition Agreement, and sets forth claims for breach of contract and violation of the CFAA.

2.      United is engaged in the business of renting and selling equipment and merchandise to the commercial and general public throughout the United States, including Delaware.  United rents and sells, among other things, construction equipment, power tools, aerial work platforms, scissor, aerial and boom lifts, forklifts, generators and light trucks.  United has numerous branch locations throughout North

America, including branch facilities in Delaware, and its headquarters is located in Stamford, Connecticut.

3.      Defendant is a former employee of United.

4.      Jurisdiction over this matter arises under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1367 (supplemental jurisdiction).

5.      Under his Confidentiality and Non-Competition Agreement dated December 17, 2014 ("Agreement"), Wynne agreed to the following:

> <u>Consent to Personal Jurisdiction</u>.  Employee hereby agrees that the interpretation and enforcement of the provisions of this Agreement shall be resolved and determined exclusively by the state court sitting in Fairfield County, Connecticut or the federal courts in the District of Connecticut and Employee hereby consents that such courts be granted exclusive jurisdiction for such purpose.

The claims contained herein arise, in part, out of, and are related to the terms of the Agreement referenced above.


**General Allegations**

6.      At all relevant times up until October 21, 2016, Wynne was an employee of United.   During the course of his employment, Wynne served as an operations manager, inside sales representative and, most recently, outside sales representative for the Bear, Delaware branch location (the "Bear Branch").

7.      During his time at United, Wynne had controlled access to certain of United's trade secrets and other confidential information, which are shared with employees only as necessary, and only to those who agree to keep such information confidential.

8.     United's trade secrets and confidential information are not known or open to the public, and United undertook reasonable measures to keep such information confidential and out of the public domain.

9.     Much of United's confidential information is contained on United's RentalMan/WYNNE computer system and/or other customer relationship management tools, access to which is password protected and limited to authorized employees. Moreover, United's employees are responsible for updating and documenting certain confidential information obtained during the course of their employment in United's protected computer system and/or on related devices.

**Wynne's Agreement**

10.     United and Wynne are parties to the Agreement.

11.     Under the Agreement, Wynne acknowledged that:

*All products, correspondence, reports, records, charts, advertising materials, designs, plans, manuals, "field guides," memoranda, lists and other property compiled or produced by Employee or delivered to Employee by or on behalf of the Company or by its customers . . . , whether or not confidential, shall be and remain the property of the Company and shall be subject at all times to its direction and control.*

12.     Wynne further agreed that, upon termination of his employment, he would "*promptly deliver to the Company all originals and copies (whether in note, memo or other document form or on video, audio or computer tapes or discs or otherwise) of all confidential or secret information, and of all property referred to [in Paragraph 11*

*above], that is in his . . . possession, custody or control, and whether prepared by*

*[Wynne] or others.*"

13.    The Agreement contained the following provision, to which Wynne agreed,

that outlined and defined "Confidential information" as follows:

> *(h)    "Confidential information" shall mean all information which is valuable to the Company and not generally known to the public, and includes, but is not limited to:*
>
> > *(i)    business, pricing and management methods;*
> >
> > *(ii)    finances, strategies, systems, research, surveys, plans, reports, recommendations and conclusions;*
> >
> > *(iii)    names of, arrangements with, or other information relating to, the Company's customers, equipment suppliers, manufacturers, financiers, owners or operators, representatives and other persons who have business relationships with the Company or who are prospects for business relationships with the Company;*
> >
> > *(iv)    technical information, work product and know-how;*
> >
> > *(v)    cost, operating, and other management information systems, and other software and programming; and*
> >
> > *(vi)    the name of any company or business, all or any substantial part of which is or at any time was a candidate for potential acquisition by the Company, together with all analyses and other information which the Company has generated, compiled or otherwise obtained with respect to such candidate, business or potential acquisition, or with respect to the potential effect of such acquisition on the Company's business, assets, financial results or prospects.*

14.    The Agreement further provided that "[b]*efore taking any position with any*

*person or entity during the 12 month period following the termination of his   . . .*

*employment . . . [Wynne] will give prior written notice to the Company of the name of any such person or entity.*"

15.     The Agreement also contained a restrictive covenant, which Wynne accepted, that restricted Wynne from competing directly or indirectly with United, anywhere within the limited area of a 50 mile radius of the Bear Branch during his employment and 12 months thereafter.  Specifically, the Agreement provides:

> (a)     *During [Wynne's] employment by the Company and for a period of 12 months immediately following the termination of his . . . employment for any reason whatsoever, (whether for cause, [Wynne] will not, directly or indirectly (whether through affiliates, relatives or otherwise):*

> (i)     *in any Restricted Area (a "Restricted Area" is defined as the area within a 50 mile radius of any and all Company locations in which Employee performed services for, or had management responsibilities for, at any time during the 24 month period preceding the termination of Employee's employment with the Company), be employed or retained by any person or entity who or which then competes with the Company to any extent, nor will Employee directly or indirectly own any interest in any such person or entity or render to it any consulting, brokerage, contracting, financial or other services or any advice, assistance or other accommodation[.]*

## Breaches/Tortious Conduct of Wynne

16.     On or about October 21, 2016, Wynne resigned his employment at United.  At this time, Wynne advised United that he would not be seeking immediate employment and failed to advise United that he had obtained employment with a competitor within the same industry.   At the time of his resignation, Wynne returned certain United property to the Company, including his Company iPhone, which was not

only Company property, but also contained Company data related to, among other things, customer contacts, data and other communications.

17.     United subsequently learned that Wynne had accepted employment with Iron Source, LLC ("Iron Source"), a direct competitor of United.  In this regard, Wynne is performing services for Iron Source in Smyrna, directly within the Restricted Area.

18.     United has also learned that, **since** his resignation, Wynne has, without authorization, accessed his former United iPhone that was assigned to Wynne during the course of his employment.  In fact, Wynne located the iPhone, placed it in "lost" mode, and remotely wiped it - causing all United data/information on that device to be permanently removed/deleted.  Upon information and belief, Wynne utilized his former United email address and a personal password that he set in order to gain access to United's iPhone.

19.     Wynne committed the acts alleged herein with knowledge that his conduct would harm the financial interest of United.

20.     Wynne committed the acts alleged herein for his own benefit and the benefit of Iron Source.

**COUNT I – <u>Violation of the CFAA</u>**

21.     United realleges and reincorporates herein by reference the allegations set forth in paragraphs 1 through 20 above as though fully set forth herein.

22.     United's iPhone qualifies as a "protected computer" as that term is defined by the CFAA.

23.     Upon information and belief, Wynne intentionally accessed a protected computer (United's iPhone), without authorization or exceeding his authorized access, and thereby deleted such information from United's protected computer.

24.     Wynne became unauthorized to access United's computer system upon (i) accepting employment with a competitor and/or (ii) deciding to become an agent for a competitor and/or (iii) upon acting or intending to act for the benefit of himself and/or Iron Source, as opposed to United, and/or (iv) resigning from United.

25.     Wynne, knowingly and with intent to benefit either personally or on behalf of Iron Source, accessed United's protected computer without authorization, or exceeded his authorized access, and by means of such conduct caused damage and/or loss to United, the value of which exceeds $5,000, and will continue to increase.

26.     Wynne intentionally accessed United's computer system  (United's cellular phone) without authorization and, as a result of such conduct, damaged United, in that he impaired the confidentiality, integrity, and/or availability of United's data, program, system and/or information, and upon information and belief, caused such data/information to be permanently destroyed, which damage/loss greatly exceeds $5,000.

27.     United's loss, including the cost of responding to Wynne's offense, conducting a damage assessment, and attempting to restore the data, program, system, or information to its condition prior to Wynne's offense, as well as the revenue that United has lost, costs it has incurred, and other direct and consequential damages as suffered by reason of Wynne's destruction of United's information, greatly exceeds $5,000.

**COUNT II - BREACH OF AGREEMENT**

28.     United realleges and reincorporates herein by reference the allegations set forth in Paragraphs 1 through 27 above as though fully set forth herein.

29.     United and Wynne exchanged valuable consideration in support of the Agreement.

30.     United duly performed all of its obligations pursuant to the Agreement.

31.     United is informed and believes that, Wynne has actively competed with United directly within the Restricted Area.

32.     Wynne's conduct within the Restricted Area and/or in soliciting customers constitutes a material breach of the Agreement, including the restrictive covenants contained therein.

33.     Wynne's conduct set forth in the previous paragraph further constitutes a material breach of the implied covenant of good faith and fair dealing.

34.     As a proximate result of Wynne's wrongful conduct, United has suffered and will continue to suffer irreparable harm and money damages.

35.    As a result of the foregoing activities, Wynne is liable to United for breach of contract.  United has suffered, and will continue to suffer, substantial and irreparable damages to its business and customer good will.

36.    United has no adequate remedy at law for Wynne's willful breach of the Agreement and restrictive covenants set forth or incorporated therein, in that:  (i) United's trade secrets are unique and valuable property that have no readily determinable market value; (ii) the Defendant's actions constitute interference with United's goodwill and customer relations; (iii) the Defendant's wrongful conduct and the damage resulting therefrom is continuing; and (iv) Defendant acknowledged in writing that a breach of the Agreement would constitute irreparable harm to United.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff **UNITED** respectfully requests judgment in its favor and against Defendant **MICHAEL WYNNES** as follows:

1.      That Defendant breached the Agreement with United and the restrictive covenants contained therein.

2.      That Defendant violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

3.      That the Court enter an Order, preliminary and permanently enjoining Defendant, **MICHAEL WYNNE**, pursuant to the terms of the Agreement from:

> Competing in the Restricted Area in violation of Section 2(a)(i) of the Employment Agreement;
>
> Soliciting the business of, or calling up, United customers in violation of Section 2(a)(ii) of the Agreement; and
>
> Accessing or using information contained on, or obtained from, United's computers, from violating the CFAA, or from using directly or indirectly any information obtained or disseminated in violation of the CFAA.

4.      That the Court award United compensatory damages arising out of Defendant's unlawful conduct alleged herein.

5.      That the Court award United punitive and exemplary damages.

6.      That the Court award United its attorneys' fees.

7.      That the Court award United punitive damages, attorneys' fees, expenses and costs, pursuant to the Agreement and/or common law.

8.      That the Court award United compensatory damages and injunctive relief or other equitable relief under the CFAA, 18 U.S.C. § 1030(g). and

9.     That the Court grant United such additional relief as is just and proper, including, but not limited to the imposition of a constructive trust and disgorgement of profits.


Dated this 28th day of November, 2016.

THE PLAINTIFFS
UNITED RENTALS, INC.


By: _____/s/_____
        Brian C. Roche  -   ct 17975
        Gerald C. Pia, Jr. – ct 21296
        Roche Pia, LLC
        Two Corporate Drive, Suite 248
        Shelton, CT 06484
        Phone: (203) 944-0235;
        Fax: (203) 567-8033
        E-mail: broche@rochepia.com
                    gpia@rochepia.com